**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFF WITTER AND MARLA WITTER,<br><br>Plaintiffs,<br><br>v.<br><br>STERLINGBROOK EQUINE, INC., *et. al.*,<br><br>Defendants. | Civil Action No. 19-14799 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on four Motions for Summary Judgment. Defendant Joan Milne, individually and d/b/a Sterlingbrook Farm ("Joan") moved for summary judgment against Plaintiffs Jeff Witter ("Jeff") and Marla Witter ("Marla") (collectively, "the Witters"). (ECF No. 32.) The Witters opposed (ECF No. 34), and Joan replied (ECF No. 36). Sterlingbrook Farm Events, LLC, Margaret Badalamenti d/b/a Sterlingbrook Farm Events, LLC ("Margaret") and Stephanie Milne d/b/a Sterlingbrook Farm Events, LLC ("Stephanie") (collectively "Sterlingbrook", and together with Joan, "Defendants") moved for summary judgment against the Witters. (ECF No. 48.) The Witters opposed (ECF No. 50), and Sterlingbrook replied (ECF No. 52). Finally, the Witters filed two motions for summary judgment against Joan and Sterlingbrook. (ECF Nos. 35, 51.) Joan and Sterlingbrook opposed (ECF Nos. 36, 52) and the Witters replied (ECF Nos. 41, 55). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants

Sterlingbrook's Motion and the Witters' Motion against Joan but denies Joan's Motion and the Witters' Motion against Sterlingbrook.

**I.    BACKGROUND**

This premises liability case arises out of an accident Mr. Witter suffered at a party hosted by Margaret and Vito Badalamenti (the "Badalamentis") in July 2017. The Witters are friends with the Badalamentis. (Joan's Statement of Undisputed Material Facts ("JSUMF") ¶ 1, ECF No. 32-2.) Joan is the mother of Margaret and Stephanie, and the mother-in-law of Vito Badalamenti ("Vito"), who is married to Margaret. (*Id.* ¶ 4.) Margaret and Melissa are co-owners of Sterlingbrook, a wedding event company. (*Id.* ¶ 8.)

Joan and the Badalamentis separately own two adjacent properties. (Sterlingbrook's Statement of Undisputed Facts ("SSUMF") ¶ 6, ECF No. 48-2.) Though separate, the two properties share a driveway and the Badalamentis use Joan's property on occasion. (JSUMF ¶ 3; Plaintiff's Statement of Material Facts ("PSMF") ¶ 17, ECF No. 35-2; Vito Dep. Tr. 46:10-15, Ex. F to Mohan Cert., ECF No. 32-3.) Joan's property contains a two-story structure known as a bank barn. (JSUMF ¶ 5.) On one side, the bank barn has a sloping ramp which terminates at the second level of the barn. (*Id.* ¶ 6.) Sterlingbrook leases the bank barn to host events. (*Id.* ¶ 8; Lease Agreement, Ex. L to Mohan Cert, ECF No. 32-3.)

On July 15, 2017, the Witters attended a party at the Badalamentis' home. (JSUMF ¶ 2.) The Witters had never been to the Badalamentis' home before the day of the party. (SSUMF ¶ 17.) Nor did Sterlingbrook host the party that evening. (JSUMF ¶ 10.) Before the Witters arrived, Vito authorized another guest to park his car inside the bank barn. (*Id.* ¶ 21.) It is undisputed that Vito did not ask Joan whether the guest may park in the bank barn. (*Id.* ¶ 22.) Vito, in fact, testified that he did not believe he needed permission from either his wife or Joan to allow the guest to park a

vehicle in the bank barn. (Vito Dep. Tr. 41:6-15.) Vito then met the guest and closed the door to the bank barn because the guest intended to stay the night. (JSUMF ¶ 23.)

Soon after, the Witters arrived at the party. (*Id.* ¶ 29.) Mr. Witter mingled with the guest, and they discussed the guest's car parked in the bank barn. (SSUMF ¶ 26.) Eventually, Mr. Witter and the guest decided to walk over to the bank barn to view the guest's car, but neither told the Badalamentis before doing so. (JSUMF ¶ 30.) The two men walked over to the unlit bank barn, entered, and used a cell phone to illuminate the vehicle. (JSUMF ¶¶ 38-39; SSUMF ¶¶ 27-30.) As they started to walk back to the Badalamentis' home, Mr. Witter veered off the ramp towards the grass and fell off the stone ledge. (JSUMF ¶¶ 43-44.)

On July 8, 2019, the Witters initiated this action. (Compl., ECF No. 1.) The Complaint alleges that because of Defendants' negligence, Mr. Witter suffered serious injuries. Mrs. Witter also alleges a claim for loss of consortium.

## II.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A dispute is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it can "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the non-moving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support the non-movant's claim. (*Id.* at 325.) Alternatively, a moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.* If the movant brings affirmative evidence or makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322 n.3. The burden of persuasion, however, rests on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Id.* at 322.

To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423. On a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. Absent a genuine dispute for trial, summary judgment as a matter of law is proper. *Id.* at 249-50.

### III.   DISCUSSION

The existence and scope of a duty of care are legal issues to be determined by the court. *Kuehn v. Pub Zone*, 835 A.2d 692, 698 (N.J. Super. Ct. App. Div. 2003) (citing *Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996)). To establish a cause of action for negligence under New Jersey law, a plaintiff must prove four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (citation omitted). The Court first considers the proper standard to determine (1) if there was a duty owed to the Witters, and (2) if Defendants breached the duty owed to the Witters.

4

### A. New Jersey's Premises Liability Standards.

In New Jersey, the common law established traditional premises liability that a landowner owed increasing care to an individual on the landowner's property depending on whether the visitor is a trespasser, licensee or social guest, or business invitee. *Parks v. Rogers*, 825 A.2d 1128, 1132 (N.J. 2003). New Jersey's premises liability doctrine, however, is evolving to "a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others." *Maran v. Victoria's Secret Stores, LLC*, 417 F. Supp. 3d 510, 521 (D.N.J. 2019). A court's task is to "consider all the surrounding circumstances to determine whether it is fair and just to impose upon the landowner a duty of reasonable care commensurate with the risk of harm." *Sussman v. Mermer*, 862 A.2d 572, 574 (N.J. Super. Ct. App. Div. 2004) (citing *Brett v. Great Am. Recreation, Inc.*, 677 A.2d 705 (N.J. 1996)). "In assessing whether imposition of such a duty would be fair and just, courts weigh and balance the following four factors: (1) the relationship of the parties, (2) the nature of the attendant risk, (3) the opportunity and ability to exercise care, and (4) the public interest in the proposed solution." *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993).

Nonetheless, New Jersey courts are clear that the traditional categories align with the factors set forth in *Hopkins*. *Maran*, 417 F. Supp. 3d at 522 ("While the status of the injured party no longer rigidly dictates a landowner's liability, the common law classifications remain helpful in determining the existence and scope of the duty of care" (citing *Amentler v. 69 Main St., LLC*, No. 08-0351, 2011 WL 1362594 at *5 (D.N.J. Apr. 11, 2011))); *Rowe v. Mazel Thirty, LLC*, 209 N.J. 35, 45 (2012) ("The common law categories [of invitee, licensee, and trespasser] are a shorthand . . . for the duty analysis; they, too, are based on the relationship of the parties, the nature of the risk, the ability to exercise care, and considerations of public policy. The only difference is

5

that . . . the duty analysis has already been performed[.]"); *see also Amentler*, 2011 WL 1362594, at *5.

In sum, the Court will analyze these claims under the traditional premises liability categories, however, the Court will also incorporate the *Hopkins* factors.

**B.     The Duty of Care**

In resolving the dueling summary judgment motions, the Court must first address the relevant duty of care. Joan and Sterlingbrook argue that because Mr. Witter was a trespasser, the only duty of care owed to him was to refrain from willfully injurious acts. (Joan Moving Br. 10-12, ECF No. 32-1; Sterlingbrook Moving Br. 11-18, ECF No. 48-1.) On the other hand, the Witters solely ask the Court to determine that both Joan and Sterlingbrook owed the Witters a duty of care, though they do not specify the level of duty owed. (Witters Opp'n Br 14-15, ECF No. 35-1; Witters Opp'n Br 14-15, ECF No. 51-1.)

**1.     Joan's Duty of Care**

To determine the appropriate duty of care owed from Joan, the Court begins its analysis under the traditional premises liability categories. The Court concludes that no genuine material dispute of fact exists as to which traditional category the Witters fall under with respect to Joan: they were Joan's social guests.[1] A social guest is a gratuitous licensee who enters the homeowner's premises with an "invitation." *Grecco v. Sullivan*, 2010 WL 3720298, at *3 (N.J. Super. Ct. App. Div. Sept. 17, 2010). Here, the Witters testified that they never met Joan before the incident.

---

[1] The Court notes that Joan leased the bank barn to Sterlingbrook Farm Events. (Lease Agreement, Ex. L to Mohan Cert.) Joan, however, did not fully cede possession of the bank barn as agreed to under that lease. (*Compare* Lease Agreement to Mohan Cert. ("[Sterlingbrook Farm Events] agrees . . . to maintain the facility in its current state of repair including undertaking routine and appropriate general repairs to ensure continued use of the facilities.") *with* Milne Dep. Tr. 35:4-36:5 ("Did you have any sort of say in the way things were done or was it left up to Nicole and your other daughter, Stephanie? It was a combination. We all discussed it.")).

(PSMF ¶ 4.) Even still, the record presents evidence that Vito had authority to grant permission to use the bank barn on Joan's property. For example, Joan admits that Vito does utilize the property in certain instances. (Milne Dep. Tr. 45:10-21.) Here, Vito testified that he did not need to ask permission before allowing the social guest into the bank barn. (Vito Dep. Tr. 41:6-15.) Moreover, Joan testified that she did not "recall having a lot of objection to [a guest parked in the bank barn]." Joan Tr. 69:8-15); *See Stackhouse v. Bryant*, No. A-5284-12T3, 2014 WL 2131710, at *1 (N.J. Super. Ct. App. Div. May 23, 2014) (affirming trial court decision finding that plaintiff and his family were social guests at defendants' home even though defendants' son invited them and defendants "lack[ed] of knowledge as to [their] presence."). The Court thus finds that the Witters were social guests under the traditional analysis. *See DeRobertis by DeRobertis v. Randazzo*, 462 A.2d 1260, 1264 (N.J. 1983) ("An express invitation is not necessary to create a license; an implied invitation will suffice.") (citing *Snyder v. I. Jay Realty Co.*, 30 N.J. 303, 312 (1959)).

The application of the *Hopkins* factors leads the Court to the same conclusion. As set forth above, the first and second *Hopkins* factors weigh in favor of finding that the Witters were social guests. The Witters were social friends with the Badalamentis who had apparent authority to use Joan's property. Applying the second *Hopkins* factor, the nature of the attendant risk, this type of injury was foreseeable. *Davis v. Devereux Found.*, 37 A.3d 469, 486 (N.J. 2012) ("This aspect of the inquiry focuses the Court on the issue of whether the risk is foreseeable, whether it can be readily defined, and whether it is fair to place the burden of preventing the harm upon the defendant.").

Next, the Court turns to the third factor, the ability to exercise care. The *Hopkins* court noted that "what precautions are reasonable depends in part on the practicability of preventing the harm." *Hopkins*, 132 N.J. at 443 (citation omitted). Joan could have exercised care by installing railings to guard against guests falling in the bank barn. In fact, the Court notes that shortly after

the incident, Margaret and her father erected a fence to guard against such an accident occurring again. (Milne Dep. Tr. 25:12-16.) Finally, the public interest is not implicated in this instance. Most importantly here, the bank barn is not open to the public. The property is only open to customers and their guests during specific times that events are hosted in the bank barn. The Court also notes that the record indicates that when there are events at the bank barn, it is illuminated. In addition, the bank barn is in a rural area, further diminishing the likelihood that the public is at any inherent danger of future injury at the barn. (Witter Dep. Tr. 91:18.) Balancing the *Hopkins* factors, the Court concludes that Joan owed a duty of care to Mr. Witter. The Court, therefore, grants the Witters' motion against Joan.

### 2. Sterlingbrook's Duty of Care

The Court reaches a different conclusion regarding Sterlingbrook, however. Sterlingbrook argues that Mr. Witter was a trespasser as it relates to it because he did not have their permission to enter the commercial property. (*See* Sterlingbrook's Moving Br. 13.) Furthermore, even if Mr. Witter was an invitee, Sterlingbrook avers that it owed him no duty to warn of the danger of walking over to the bank barn, because the danger was open and obvious. (*Id.* at 21.) The Witters counter that they were not trespassers, and the danger of the ramp was not open and obvious. (*See generally* Pl.'s Opp'n Br.)

The Court concludes that no genuine dispute of material fact exists regarding the duty of care owed by Sterlingbrook. The Witters were trespassers as it relates to Sterlingbrook. Sterlingbrook did not hold an event at the bank barn that evening, and the Witters do not allege they have otherwise interacted with the company. A trespasser is a person "who has no privilege to be on the land" of another, whether by invitation or permission. *Hopkins*, 132 N.J. at 433. "The owner owes a minimal degree of care to a trespasser," even where there is "a dangerous condition"

on the property. *Pisano v. AAS Realty Holdings, Inc.*, 2018 WL 1882676, at *2 (N.J. Super. Ct. App. Div. Apr. 20, 2018) (quoting *Hopkins*, 132 N.J. at 434).

Under the *Hopkins* factors, there was no relationship between the Witters and Sterlingbrook. Applying the second *Hopkins* factor, the nature of the attendant risk does not suggest liability should be imposed here. While someone falling off the ramp while it was unlit is reasonably foreseeable, as it relates to Sterlingbrook, it was not foreseeable that Mr. Witter would have been at the barn that evening. Moreover, imposing liability on Sterlingbrook certainly does not satisfy any sense of fairness because the business did not operate that evening. *See Sussman*, 862 A.2d at 575. The analysis of the third factor, the ability to exercise care, is the same as above for Joan. Similarly, the fourth factor, the public interest, does not favor that Sterlingbrook owed a duty of care to the Witters. The Court thus finds that Sterlingbrook did not owe Mr. Witter a duty of care beyond that owed to a trespasser.

The Witters proffered an expert report in support of their argument that Defendants owed a duty of care to them. (*See* Report of Carl R. Scatena ("Scatena Report"), Ex. A. to Mohan Cert.) The expert inspected the area of the fall. He concluded that "the unguarded wall is a significant safety hazard that was responsible for [Mr. Witter's] fall and sustaining injuries to his body." (*Id.*) The expert also opined that Defendants committed "careless, negligent, and unsafe acts and omissions." (*Id.*)

Notwithstanding the expert report, the Court still finds summary judgment in favor of Sterlingbrook appropriate. The expert report alleges that Defendants failed to provide adequate exterior lighting, signage or notice of the unguarded retaining wall to Mr. Witter or any other invited or uninvited guests. (Scatena Report 11.) But as discussed above, the area is not generally open to the public. Moreover, when there are guests present during events, the bank barn is illuminated. The Court thus finds that the report does not create a dispute of material fact. *Brill v.*

9

*Guardian Life Ins. Co. of Am.*, 666 A.2d 146, 158 (N.J. 1995) (citation omitted) ("A party cannot defeat a motion for summary judgment merely by submitting an expert's report in his or her favor"). Meaningfully, while the report notes the condition of the property, it is the province of the Court to determine the duty owed to Mr. Witter. *Kuehn*, 835 A.2d at 698. The Court finds that Sterlingbrook did not owe a duty to Mr. Witter beyond that of a trespasser.

Because the Court finds that Sterlingbrook did not owe Mr. Witter a duty of care beyond willful injurious acts, the Court finds that Sterlingbrook should be dismissed from this matter. Therefore, Sterlingbrook's Motion is granted and the Witters' Motion against Sterlingbrook is denied.[2]

### C. Breach of the Duty of Care

Next up is whether Joan breached the duty of care. Joan argues that because the Witters were trespassers and she did not engage in willful or wanton conduct, she did not breach any duty owed to Mr. Witter. (Joan Moving Br. 12.) The Witters do not explicitly argue that Joan breached a duty to Mr. Witter, but do request that the Court deny Joan's Motion, necessarily precluding a finding that Joan did not breach a duty of care. (Pl.'s Opp'n Br. 14.)

The Court concludes that whether Joan breached the duty of care is a jury question. On one hand, the Witters were social guests and case law indicates that landowners may be liable when social guests are injured because of unlit areas. *Sussman*, 862 A.2d at 575; *Parks*, 825 A.2d at 1128. On the other hand, a reasonable fact finder could conclude that Mr. Witter exceeded the scope of the invitation, that he was negligent in wandering off to the bank barn without alerting the Badalamentis, and that such negligence contributed to his injuries. But that determination is for a later jury, not this Court. The Court, therefore, denies Joan's Motion.

---

[2] For the avoidance of doubt, Margaret remains a party to this action in her individual capacity.

10

An owner "does not have a duty actually to discover latent defects when dealing with licensees, [but] the owner must warn a social guest of any dangerous conditions of which the owner had actual knowledge and of which the guest is unaware." *Rowe*, 34 A.3d at 1253; Restatement (Second) of Torts § 343 (1965) (noting that owners are only responsible for warning business invitees of dangers the owners should have discovered and which the invitees would not have recognized). Otherwise, an owner breaches the duty of care owed to a social guest.

Applying these facts to consider whether Joan breached a duty of care, the Court notes that Mr. Witter suffered a back injury after falling nearly seven feet off a stone ledge right outside the unlit bank barn. Several New Jersey courts have affirmed that "[t]he failure to provide lighting in an area that poses a danger to social guests" presents a genuine dispute of material fact that precludes summary judgment on an issue of breach. *Sussman*, 862 A.2d at 575; *see also Parks*, 825 A.2d at 1128. But for Mr. Witter, the Court notes the inherent danger in Mr. Witter's conduct.[3] Mr. Witter was invited to a party at the Badalamentis' home, located in a rural area. Mr. Witter arrived late in the evening, well after it was already nighttime. (JSUMF ¶ 27.) He then left the home, in the dark, without alerting the homeowners, to walk over to another structure. Mr. Witter arguably should have been aware of the danger of traversing an area unknown to him without

---

[3] Joan briefly highlights that the ramp is a feature "open and obvious" on the property. But the Court finds that the danger of falling off the ramp, in this instance, does not create "a single, unavoidable resolution of the alleged disputed issue of fact[.]" *Jimenez v. Applebee's Neighborhood Grill & Bar*, No. A-2247-13T2, 2015 WL 893236, at *5 (N.J. Super. Ct. App. Div. Mar. 4, 2015) (citation omitted).

permission of one of the landowners.[4] All in all, the Court also finds that a genuine dispute of material fact exists for a jury.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Witters were Joan's social guest and owed a duty of care by her. It therefore grants the Witters' Motion against Joan. The Court also finds that whether Joan breached that duty of care is a question for the jury. The Court, therefore, denies Joan's Motion. For Sterlingbrook, the Court finds that the Witters were trespassers. The Court grants Sterlingbrook's Motion and denies the Witters' Motion against Sterlingrbook. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[4] To be sure, the Court notes that whether Mr. Witter exceeded the reasonable scope of his invitation is a question for the jury. *Roth v. Marina Assocs.*, No. 07-2596, 2009 WL 2496803, at *4 (D.N.J. Aug. 11, 2009). The Court notes, however, that the duty to maintain a safe premises only extends to the area "within the scope of the invitation." *Id.* (quoting *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 275 (1982)).